UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-21802-CIV-FAM

PABLO MICHEL RAMIREZ GONZALEZ )
and all others similarly situated under 29 )
U.S.C. 216(b), )
  )
              Plaintiff, )
    vs. )
  )
HOME NURSE CORP. d/b/a THE PALACE )
AT HOME, )
  )
          Defendant. )
_____ )

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, through undersigned counsel, and replies to [DE 44] as follows:

## MEMORANDUM OF LAW AND ARGUMENT

### 1. THE PLAINTIFF WAS NOT AN INDEPENDENT CONTRACTOR BUT RATHER AN EMPLOYEE UNDER THE FLSA.

Plaintiff was not an independent contractor during the relevant employment period, but rather an employee as defined by 29 U.S.C. § 203(e)(1). An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d). An employment relationship is decided by applying the "economic realties test." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (D. Fla 2001). In applying the "economic realities test," the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged

employer's business.  *See, Santelices, supra.*  Defendants also cite to *Layton v. DHL Express (USA), Inc*., 686 F.3d 1172 (11th Cir.2012), and *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013).  As indicated, in cases involving question regarding joint employment and/or independent contractor, the economic realities test is of central importance.  The case at bar specifically concerns the question of whether Plaintiff was an independent contractor, or rather Defendant's "employee" under the FLSA.

As set forth in Plaintiff Statement of Material Facts, during the hiring process, human resources first met with the Plaintiff, and then Plaintiff met with Lillian Diaz.  Diaz ensured Plaintiff had proper certifications, valid license and "everything."  Diaz then confirmed Plaintiff's availability, his language, whether he was allergic to dogs or cats.  Diaz Deposition, P18, L15-25; P19.  *See also*, Plaintiff's Motion regarding the background check, interview process, physical examination and need for reference letters.  Caceres Deposition, P11, L21-25;  Chacon Deposition, P76, L8; P21, L1-6; P32; P66; P75.  Such goes to prong (1) under *Santelices, supra,* the nature and degree of control of the workers by the alleged employer.  Defendant treated Plaintiff has an employee.  Further, The Defendant kept copies of Plaintiff's certifications in its files, after verified.  Also kept are the reference letters, CPR, background checks, insurance coverage records and social security verification.   Defendant notifies the state of Florida when the workers leave.  Chacon Deposition, P74, L16-25; P78; P103.  With respect to control, Plaintiff also refers to his Affidavit regarding the checklist, and vacation request approvals.  Moreover, Plaintiff had to sign in and out each day.  Chacon Deposition, P97, L6-14; P98.  Diaz would perform home inspections regarding the home that Plaintiff performed work at, while Plaintiff was present in the home.  Diaz Deposition, P29, L8-25.   If the client/family wanted to get rid of the home health aide (not happy with the aide), they would tell Diaz to get someone else.  Diaz Deposition, P34, 1-24.  Capote testified that some health aides have been fired by the manager pursuant to an approval process.  Capote Depositon, P23-24.  *See also*, Chacon Deposition, P78, P79-83 regarding client complaints and investigation process.  Such facts further show control of the Defendant over the Plaintiff—the clients were not Plaintiff's, and his job was dependent on Defendant's choices and authority.  The home health aides never brought their own clients to Defendant's company.  All of the clients are the Defendant's clients.

Diaz Deposition, P41, L15-25, P42, L9-11.

Regarding Orientation Statement (discussed in more detail in Plaintiff's Motion), Chacon admitted the workers are "allowed" (3) breaks, during the (12) hour shift. The "rule" is "60 minutes". Chacon Deposition, P129, L19-25; P130; P131. Such shows that Plaintiff was an FLSA employee, and Defendant exercised the requisite control. When asked about discipline and reprimands in relation to home health aides, Frankie Capote testified there was a process in place if such issues were brought to his attention. However, someone else would be responsible for writing up the home health aide, and a record would be kept. Discipline was done "professionally" he recalled regarding an aide. Some discipline was done verbally and some written. Capote Depositon, P22, L1-25; P50-51. According to Elena Garcia a scheduler, Plaintiff had a supervisor, who would exercise authority over him, and supervisory visits would be done. Disciplinary action would be taken if an aide was negligent. Garcia Deposition, P6; P15-16; P18. Such is further evidence of Defendant's authority and control under prong (1) under *Santelices, supra.*

With respect to prong (5), the degree of permanence of the working relationship, under *Santelices, supra.*, as indicated by Plaintiff's Affidavit, he started working for the Defendant on 9/12/14, and continues to work there. Thus, Plaintiff has worked for Defendant for over (3) years. Such shows the requisite economic dependence under the economic realities test.

Diaz could not point to any supplies or equipment that Plaintiff provided to do his job, Plaintiff did not have a managerial role, and the work Plaintiff performed was integral to the type of business that Defendant operated. All of the workers are given a "private duty contractor" badge in the event they work in one of Defendant's buildings. Chacon Deposition, P107, L9-20; P108. In his Affidavit Plaintiff states that "[t]he work that I did as described above was for Defendant's business, and my tasks performed were central and integral in relation to their business. Defendant's business involves taking care of patients, and my tasks were for the purpose of caring for those patients." Such goes to prongs (3) and (6) under *Santelices, supra.*

To avoid re-argument regarding the Orientation Statement, Plaintiff refers to his Motion regarding same--Plaintiff states in his Affidavit that "Lilian Diaz told me the only

time I could accept a gift from the patients or the family would at Christmas."  Plaintiff was economically dependent on Defendant, and Defendant was the funding source.  Such facts also further show Defendant's control, and that Plaintiff did not have a profit/loss opportunity.  *See Santelices, supra*.  Defendant has set forth no proof that Plaintiff ever received actual compensation beyond what Defendant paid him-he was clearly economically dependent Defendant, which is central to the economic realities test.

The health aides did not hire their own helpers.  Capote Deposition, P32, L11-14.  Plaintiff's refers to his Motion and Affidavit regarding profit/loss considerations.   Such goes to prongs (2) and (3) under *Santelices, supra.*  Also such strongly goes towards Plaintiff's favor under the economic realities test, as Plaintiff was paid by Defendant, was economically dependent, and Defendant was the funding source.  *See,* Plaintiff's Motion and the discussion of *Jeanneret v. Aron's E. Coast Towing, Inc.*, No. 01-8001-CIV, 2002 WL 32114470, at *2 (S.D. Fla. Jan. 29, 2002) *aff'd sub nom. Jeanneret v. Aron's E. Coast*, 54 F. App'x 685 (11th Cir. 2002), and *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209 (11th Cir. 2003).  The Defendant is the one that directly pays all of the home health care workers, including both the ones that work in Defendant's facilities and those that work in private homes.   Chacon Deposition, P163; P225; P226.  Thus, the Defendant was the funding source of Plaintiff's wages.  This is undisputed.  *See also* Plaintiff's Motion regarding When Diaz worked as a "field nurse" for Defendant, she was an "employee" not an independent contractor.  However, "[a]t the beginning", Diaz was an independent contractor "nurse".  Diaz said "I don't know" when asked why some nurses are "independent contractors" and other "employees".  Diaz also did not know if such concerned the issue of overtime pay.  Diaz Deposition, P21, L11-25; P22.  The Court should query as to why Defendant picks and chooses which workers are independent contractors; such appears to be transparently arbitrary and devised to evade payment of overtime wages to some employees.  Plaintiff refers to his Motion regarding the more detailed discussion of *Jeanneret, supra* and *Martinez-Mendoza, supra.*

**2.** **THE COURT SHOULD FIND THAT LIABILITY HAS BEEN ESTABLISHED, AND THAT DEFENDANT OWES PLAINTIFF UNPAID OVERTIME WAGES.**

Defendant at Page 8 of its Response makes reference to their pending motion to strike [DE 42]. However, In *Rodriguez v. Jones Boat Yard, Inc.,* 2011 U.S. App. LEXIS 15509, *4 (11th Cir. 2011): "[u]nder the sham affidavit rule, "[a]n affidavit may be stricken as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Tippens v. Celotex Corp.,* 805 F.2d 949, 954 (11th Cir. 1986) (citations omitted). The court making this determination must be careful to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." Id. at 953."

The Eleventh Circuit has explained in *Lane v. Celotex Corp.,* 782 F.2d 1526, 1532 (11th Cir. 1986), that "we may only disregard an affidavit that 'contradicts, without explanation, previously given clear testimony.'"(*quoting Van T. Junkins & Assoc. v. U.S. Indus., Inc.,* 736 F. 2d 656, 657 (11th Cir. 1984)). Thus, the Eleventh Circuit requires that a court find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit. The court must also distinguish between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. *See Tippens supra.*

In [DE 42], Defendant refers to Plaintiff's alleged testimony in Paras. 2 and 3(a)-(i) of the Motion. However, the Court should reject Defendant's arguments, because Plaintiff's theory concerning the Rates Agreement is not contradictory in his Motion for partial summary judgment or the respective material facts [DE Nos. 29 and 30]. Plaintiff's theory continues to be that he did not sign the addendums, and never expressly agreed to the hourly rate payment scheme that is advanced by Defendant. Such is corroborated by other witness testimony. For example, as set forth in [DE Nos. 29 and 30], Caceres said "[w]e briefly explain to them the rates." The new-hires only sign the "initial rates agreement." Caceres would not explain anything beyond what is in the Rate

Agreement.  Caceres Deposition, P4; P5, L1-4; P6; P7; P8; P9, L15-23.  *See* the Rates Agreement already filed with [DE Nos. 29 and 30].  As indicated by the Rates Agreement, **only the first page is signed by the Plaintiff**[1]; the agreements for **subsequent years attached as addendums are not signed**.  Defendant alleges Plaintiff admitted he understood the document, because when asked if he understood it he answered "[a] little bit, but the most important thing to me was starting to work and that was the first day."  Plaintiff Deposition, P43, L12-14.  Defendant made no efforts after that response to elicit clarifying details as to what Plaintiff did or did not understand regarding the Rates Agreement.  During the deposition Plaintiff continued to maintain his position that he was paid "per shift". Plaintiff Deposition, P46, L12-18.

In Para. 3(g) of [DE 42], Defendant argues Plaintiff was aware he was paid hourly with an overtime rate.  However, Plaintiff continued to maintain his position that he was paid "per shift" (ex. $108.50 per shift)—Plaintiff answered "Correct".  Plaintiff Deposition, P46, L12-18.

The Rates Agreement was discussed at Chacon's deposition, and he admitted the workers are <u>not required</u> to sign each year.  They only sign when first hired to work.  Plaintiff signed the Agreement on 9/12/14.  The amount per shift is displayed on the sheet so the worker knows how much is paid "for a 12-hour shift".  Allegedly it is "easier" for the worker to be told how much is paid "per shift".  Chacon Deposition, P85; P86; P87; P88.

Plaintiff states in his Affidavit that "[w]ith respect to the attached Rates Agreement, I only signed the first page dated 9/12/14, and never signed any of the Addendums for 2015, 2016 or 2017 that changed the pay rate.  At no time did the Defendant ever show me the Addendums prior to this lawsuit—the first time I saw them was when I was deposed in this case.  As indicated by the attached Payroll Detail Report from 1/16/17-1/31/17, the only rate of pay displayed is the shift rate (ex. $110.51).  Another example is the attached Pay Rates Calculator Detail Report that indicates a shift rate from March 2015 (ex. $109.85 per visit).  Also attached are some exemplary paystubs from 1/20/16 and 1/19/17, to show that the Defendants never set forth the

---

[1]This Rate Agreement is dated in 2014, which precedes the claim period for this case (1/1/15-2/17/17).

6

number of hours and did not reference overtime.  Also attached is a Welcome to the Palace at Home's Private Duty Department that I was given when I started working on 9/12/14.  On page 2, the Pay Rate is displayed as $11.90 per hour for 1 hour-8 ½ hours, or $108.50 per daily shift (9-12 hours).  When I first started I was given (4) hour shifts at $11.90 per hour, however, to the best of my recollections, near the end of 2014 or the beginning of 2015, I was assigned to begin (12) hours shifts.  At that time, it was my understanding that I was then being paid $108.50 per daily shift because I was working (12) hours.  I believe from that point on I was always paid on a daily shift rate.  As stated, I never signed any of the Addendums for 2015, 2016 or 2017, and I never saw them prior to this lawsuit."

Plaintiff will not herein reargue his entire summary judgment Motion, but the point is, that none of the facts addressed by [DE 42] or any of the summary judgment pleadings contradict Plaintiff's ultimate statement that "I believe from that point on I was always paid on a daily shift rate."  In the case at bar, Plaintiff has continued to maintain that during the relevant period (1/1/15-2/17/17) he believed he was paid per shift (not hourly).  As noted *supra*, the Eleventh Circuit in *Jones Boat Yard, Inc.,* 2011 U.S. App. LEXIS 15509, *4  held that the relevant inquiry is whether "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *See also*, *Tippens, supra.*  Defendant's Motion does not meet that standard in the case at bar.

In the case at bar, Plaintiff has continued to maintain that during the relevant period (1/1/15-2/17/17) he believed he was paid per shift (not hourly).   As Plaintiff argued in [DE Nos. 29]: "[h]owever, **"a fixed salary will not be deemed to include an overtime component in the absence of an express agreement to that effect."** *Marshall v. R & M Erectors, Inc*., 429 F. Supp. 771, 780 (D. Del. 1977); *see Wirtz v. Leon's Auto Parts Co*., 406 F.2d 1250, 1252 (5th Cir. 1969) (finding that FLSA requires "an explicit understanding between the parties as to the existence of a regular wage rate that is stepped up for overtime hours"); *Amaya v. Superior Tile and Granite Corp*., 2012 WL 130425, at *9 (S.D.N.Y. Jan.17, 2012) ("An agreement for a fixed weekly salary for

more than 40 hours of work per week only complies with the FLSA and Labor Law if there is an explicit understanding between the employer and employee as to regular and overtime rates."). There is no evidence here, in the employment contract or elsewhere, of such an express agreement." *Fresh v. Diamond Dev. & Investments Inc*., 1:13-CV-2657-WSD, 2016 WL 2745836, at \*6 (N.D. Ga. May 11, 2016).  Plaintiff argued such case law in his summary judgment Motion, and such demonstrates why the Court should also reject Defendants arguments in Para. 5 [DE 42].  Plaintiff, at P48 of his Deposition, said "I don't know" in response to a question regarding "the rate agreement".  Moreover, he also said "I was not – not in agreement."  Plaintiff Deposition P48, L8.  Transparently, defense counsel's questioning of Plaintiff mentioned nothing about the Addendums (that Plaintiff undisputedly never signed).  At FN3 of [DE 42], Defendant acknowledged that Plaintiff denied receiving the Addendums.  The applicable law in the case at bar, as set forth *supra*, states that **"a fixed salary will not be deemed to include an overtime component in the absence of an express agreement to that effect."** *Marshall v. R & M Erectors, Inc*., 429 F. Supp. 771, 780 (D. Del. 1977).  Plaintiff stated "I was not – not in agreement."  Plaintiff Deposition P48, L8.  Defendant has not proven an express agreement at all, regarding the unsigned Addendums.  As a matter of law, this Court should grant summary judgment in Plaintiff's favor.

Plaintiff's Affidavit does not contradict the undisputed fact that he never signed the Addendums for the subsequent years, and the Court should find as a matter of law the Plaintiff is entitled to overtime damages, and that Defendant is liable for at least some overtime damages.  Thus, the trial should at most only be as to damages.  Defendant simply cannot dispute such facts regarding the Addendums, and it is therefore baseless for Defendant to argue that Plaintiff's Affidavit is a sham.  In Para. 4 Defendant cites to Page 28 of Plaintiff's Deposition, but once again Plaintiff on Page 28 confirmed his position that he was paid a shift rate.  In [DE 42], Defendant misrepresents Plaintiff's deposition testimony on Page 47 of his deposition, in claiming Plaintiff admitted he was mistaken regarding the shift rate.  Rather, Plaintiff was asked if he was "mistaken earlier on in your deposition when you said you had **never seen a document**…."  Plaintiff Deposition, P47, L9-12 (emphasis added).  Such is far different than Plaintiff admitting that he was mistaken and actually believed he was paid an hourly rate with the

appropriate overtime, as opposed to a shift rate.  Moreover, At FN3 of [DE 42], Defendant acknowledges that Plaintiff denied receiving the Addendums.  Also, it still remains undisputed that Plaintiff never signed the Addendums.  Plaintiff's Affidavit states "At no time did the Defendant ever show me the Addendums prior to this lawsuit—the first time I saw them was when I was deposed in this case."  Defendant has not and cannot prove otherwise.

The case at bar concerns the method by which Plaintiff's rate of pay should be determined.  It is Plaintiff's position that he understood that during the relevant period he was paid on a daily rate.  Defendant on the other hand claim Plaintiff was paid on an hourly basis.  However, Defendant has failed to demonstrate, under the facts, that any required express agreement existed to argue that Plaintiff's pay included an overtime component.  The applicable law in the case at bar states that **"a fixed salary will not be deemed to include an overtime component in the absence of an express agreement to that effect."** *Marshall v. R & M Erectors, Inc*., 429 F. Supp. 771, 780 (D. Del. 1977).

WHEREFORE, THE PLAINTIFF REQUESTS THE COURT TO FIND THAT PLAINTIFF WAS DEFENDANT'S "EMPLOYEE" UNDER THE FLSA AND NOT AN INDEPENDENT CONTRACTOR, AND ALSO THAT DEFENDANT IS LIABLE FOR OVERTIME DAMAGES AS A MATTER OF LAW.

**Respectfully submitted,**

**J.H. ZIDELL, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: ZABOGADO@AOL.COM**
**F.B.N. 10121**
**BY:____/s/ J.H. ZIDELL_____**
**J.H. ZIDELL, ESQ.**

<u>**CERTIFICATE OF SERVICE:**</u>

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE
FOREGOING WAS SENT 11/27/17 VIA CM/ECF TO:**

**ALL CM/ECF RECIPIENTS**

**MILLER, KAGAN, RODRIGUEZ, & SILVER PL
201 ALHAMBRA CIRCLE, STE. 802
CORAL GABLES, FL 33134**

**BY:          /s/ J.H. ZIDELL                   
          J.H. ZIDELL, ESQ.**